UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES D. MARIANO,

                                          Plaintiff,              Case # 19-CV-449-FPG

v.                                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

**INTRODUCTION**

On February 4, 2016, Plaintiff James D. Mariano protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), alleging disability beginning April 1, 2012. Tr.[1] 53, 158-59. After the Social Security Administration ("SSA") denied his claim (Tr. 68-72), Plaintiff appeared, with counsel, at a hearing on May 8, 2018 before Administrative Law Judge Theodore Kim (the "ALJ"). Tr. 33-52. On August 1, 2017, the ALJ issued an unfavorable decision. Tr. 15-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

**I.      District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date and through the date last insured. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: thoracolumbar neuritis/radiculitis; chronic obstructive pulmonary disease; major depressive disorder; adjustment disorder; and generalized anxiety disorder with panic attacks. Tr. 17. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 18-20. Next, the ALJ determined that Plaintiff retains the RFC to perform light work, with the following additional limitations: he could occasionally kneel, crouch, stoop, and climb stairs; he could tolerate occasional exposure to heights, moving mechanical parts, dusts, mists, gases, odors, irritants, poor ventilation, and extreme weather; he could never climb ladders or ropes and scaffolds or be exposed to unprotected heights; he is able to understand, carry-out, and remember simple instructions and make simple work-related decisions; and he would be off task 10 percent of the workday. Tr. 20.

At step four, the ALJ found that Plaintiff had past relevant work but would be unable to perform it. Tr. 25-26. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 26-27.

**II.    Analysis**

Plaintiff argues that the ALJ's unfavorable decision was not based on substantial evidence because the ALJ improperly weighed the opinions from consultative examiner Janine Ippolito,

Psy.D., and Plaintiff's treatment providers Christina Rivera, MSW and Joan Canzoneri, NP.  ECF No. 11-1 at 15-16.  The Court agrees.

As a nurse practitioner and social worker, respectively, Canzoneri and Rivera are not "acceptable" medical sources as defined in 20 C.F.R. § 404.1513(a), the regulation applicable at the time the claim was filed.  However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as nurse practitioners and social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."  SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).  Opinions from these sources are not considered "acceptable" and are therefore not entitled to controlling weight.  *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)).  "However, the ALJ should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work."  *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)).  Although the ALJ is "free to decide that the opinions from 'other sources' . . . are entitled to no or little weight, those decisions should be explained."  *Piatt*, 80 F. Supp. 3d at 493 (quoting another source).  Furthermore, an ALJ may not disregard a medical opinion solely because the opinion is from a nonmedical source.  *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335-36 (W.D.N.Y. 2018).  Like for a treating physician, "[t]he amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole."  *Williams v. Colvin*, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4

4

(W.D.N.Y. Apr. 14, 2016). Because the ALJ failed to properly analyze the mental health opinions in the record, the RFC is not supported by substantial evidence.

On May 1, 2018, Rivera and Canzoneri completed and co-signed a Mental Impairment Questionnaire, noting that their answers were based on over two years of extensive assessment and evaluation of Plaintiff, including biweekly individual therapy, group therapy three times a week, and medication management once a month. Tr. 448-52. Rivera and Canzoneri diagnosed Plaintiff with, among other things, major depressive disorder, and noted "depressed, sad affect" and "mood-depressed, fleeting suicidal ideations," feelings of numbness, lack of pleasure, decreased energy, difficulty concentrating, restlessness, detachment, and mood disturbance. Tr. 448-49. They opined that Plaintiff would have marked limitations in understanding, remembering, or applying information, maintaining concentration, persistence, or pace, and managing oneself or adapting. He would have moderate limitations in interacting with others. Tr. 450. The providers noted that Plaintiff's chronic back pain may exacerbate his mental health limitations. Tr. 450. Rivera and Canzoneri opined that Plaintiff would be unable to maintain attention for two hours, maintain regular attendance or routine, work close to others, accept instructions and respond appropriately to criticism or changes in routine, set goals, or deal with the public. Tr. 451. He would only occasionally be able to remember and carry out simple instructions, ask simple questions, or deal with stress. Tr. 451. Overall, Plaintiff's depression, anxiety, and PTSD would interfere with his ability to complete activities of daily living and would result in his absence from work more than four days per month. Tr. 451-52.

Although the ALJ acknowledged Plaintiff's long treating history with Rivera and Canzoneri, he assigned "limited weight" to their opinions because they were "not consistent with the treatment records as a whole." Tr. 25. The ALJ acknowledged that Plaintiff would have "some

limitations in mental functioning," but asserted that the record did not support the extreme limitations provided by Rivera and Canzoneri. In support of discrediting the treating sources, the ALJ indicated that Plaintiff "was observed to have a normal memory," "was cooperative," and "was fully oriented." Tr. 25.

The ALJ's proffered reasons for discounting the opinion of Plaintiff's treating sources are not supported by substantial evidence, while their opinion is. For example, the ALJ cited Plaintiff's "normal memory" as evidence that his mental limitations were not as severe as Rivera and Canzoneri opined. Yet the assessment of "normal memory" came from Plaintiff's back pain doctor *five years* before Rivera and Canzoneri—mental health professionals—rendered their opinion based on their treating relationships with Plaintiff, which spanned *over two years* and yielded remarkably consistent findings. *See* Tr. 228, 234, 243. The remaining arguments the ALJ used to discount the treating source opinion are similarly weak. That Plaintiff was "cooperative" or "fully oriented" on examination is not probative of his his ability to manage stress, deal with others, concentrate, or follow directions. No such limitations of social functioning were incorporated into the RFC. *See Schroeder v. Comm'r of Soc. Sec.*, No. 18-CV-1309-FPG, 2020 WL 1815755, at *4 (W.D.N.Y. Apr. 10, 2020) ("To be sure, one may walk normally, have typical strength, not be in acute stress, and yet still have back issues preventing lifting, twisting, or reaching overhead—the findings are not mutually exclusive.").

Moreover, contrary to the ALJ's threadbare conclusion otherwise, Rivera and Canzoneri's opinion is consistent with the treatment records. Indeed, *years* of treatment records lay bare Plaintiff's significant mental health limitations. These records demonstrate that Plaintiff was consistently disheveled, unkempt, fatigued, depressed, sad, blunted, anxious, and had impaired judgment. Tr. 327, 329, 345, 348, 351-62, 369, 375, 378, 383, 386, 389, 392, 409, 412, 438-46.

Plaintiff reported difficulties dealing with people multiple times.  *See* Tr. 327, 345 (describing judgment during social situations as "limited").  Several times he reported suicidal ideations, and attempted suicide in August 2014, resulting in a hospitalization.  Tr. 277, 351-62, 388.  He also expressed having panic attacks in social situations including in a doctor's office in October 2016 (Tr. 369) and on a bus in March and October 2017 (Tr. 351, 411).

Importantly, the opinion from Rivera and Canzoneri is remarkably consistent with the opinion from the only other evaluating mental health practitioner in the record—the Commissioner's own consultative evaluator, Dr. Ippolito—whose opinion the ALJ gave only "partial weight."  Tr. 24-25.  Dr. Ippolito found that Plaintiff would be moderately limited in maintaining attention, concentration, and a regular schedule, and would have moderate limitations in making appropriate decisions.  Tr. 310.  She further opined that Plaintiff would have marked limitations in dealing with others and dealing with stress.  Tr. 310.  Dr. Ippolito concluded that Plaintiff's mental health problems "may significantly interfere with [his] ability to function on a daily basis."[3]  Tr. 310.

The ALJ gave "less weight" to certain parts of the opinion, including Dr. Ippolito's opinion as to Plaintiff's marked limitations in interacting with others and in dealing with stress because these limitations were apparently not supported by Dr. Ippolito's own examination of Plaintiff.  Tr. 25.  Yet, Dr. Ippolito's findings are consistent with Plaintiff's own reports of his social functioning on examination (Tr. 308) and the significant records described above.  This error was compounded by the ALJ discounting the opinions from the only other two examining sources in

---

[3] Dr. Ippolito also opined that Plaintiff could follow and perform simple and complex tasks independently.  Tr. 310.  The ALJ gave this part of the opinion "less weight" because it was inconsistent with the record.  The Court agrees with the ALJ's evaluation of this part of Dr. Ippolito's opinion because the record is replete with support for it.  Indeed, Dr. Ippolito's opinion itself indicates that Plaintiff's attention, concentration, and memory skills were impaired.  Tr. 309-10.

7

the record—both of which agreed with Dr. Ippolito on Plaintiff's marked limitations in the area of social functioning.

Because the ALJ discounted these opinions, he failed to include any limitation in the RFC for social functioning. The absence of any such limitations is not supported by substantial evidence. Indeed, it contradicts the substantial evidence in the record, including from all of the examining mental health sources, which were clear that Plaintiff would have marked limitations in social functioning. The ALJ's failure to include limitations for social functioning that comported with opinion evidence was not harmless error, as inclusion of such limitations would undoubtedly change the outcome of the case.[4] Consequently, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 12) is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 22, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[4] Because the Court concludes that the ALJ's error was not harmless, it does not reach Plaintiff's Listings argument.